RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE   11   18   05
BY      Dn

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| BERNICE LOUISE SPENCER, ET AL | CIVIL ACTION NO. 04-1782 |
| VERSUS | JUDGE DONALD E. WALTER |
| JACK STATON, ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Doc. #25] filed on behalf of defendants, Jack Staton, Dewayne Brumley, and Guffey Lynn Pattison, pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose this motion. For the reasons assigned herein, defendants' Motion for Summary Judgment is **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff, Bernice Louise Spencer ("Spencer"), brings this action against Staton, Brumley and Pattison under 42 U.S.C. §1983 and Louisiana law for damages sustained as a result of her allegedly unlawful arrest and imprisonment. Defendants assert in their Motion for Summary Judgment that they are entitled to qualified immunity because their actions were objectively reasonable under the circumstances.

In late July, 2003, John Spencer, plaintiff's husband, traveled from California to care for his aunt who lived in a trailer in Pleasant Hill, Louisiana. Spencer joined her husband on or about Friday, August 22, 2003. Spencer Statement (8/25/03), p. 2. Vasco Zimmerman ("Zimmerman"), who was married to John Spencer's sister, joined the Spencers the next day after traveling from California. Id. at p. 3. All three were staying in the same trailer in Pleasant Hill.

On August 24, 2003, Nancy and Andy Johnson (the "Johnsons") were shot to death with a large caliber weapon in their feed store in Pleasant Hill. Defendants Jack Staton ("Staton") and Dwayne Brumley ("Brumley"), both employed by the Sabine Parish Sheriff's Office, obtained information from Pleasant Hill Police Chief Ray Williams and other witnesses who heard that John Spencer was seen using firearms for target practice behind his aunt's trailer, and that Zimmerman was seen walking with a pistol and a rifle behind the Johnson feed store toward a nearby fishing pond. Based on this information, Staton and Brumley sought out the Spencers and Zimmerman for questioning about the murders. Staton Dep.25:25-26:3, Mar. 30, 2005.

Staton, Brumley and other officers went to the trailer around 3:15 A.M., and, after approximately 30 minutes of continuous knocking, Spencer opened the door and defendants took her outside. Staton asked Spencer if she had heard about the murders, but she was extremely upset about the late-night visit. After Spencer calmed down, Staton and other officers handcuffed all three suspects and took them to the Tri-Parish Narcotics Office in Pleasant Hill. Another officer confiscated a .22 rifle during a search of the trailer. The suspects' interviews began at approximately 4:10 A.M. on August 25, 2003. Spencer Statement (8/25/03), p. 1.

During Spencer's interview, Staton asked her about her return trip home to California. Spencer replied that she would leave Louisiana "probably" in the next couple of days, either by her return trip bus ticket or with her cousin. Id. at p. 5. Plaintiff denied any knowledge that the confiscated .22 rifle belonged to her husband. John Spencer admitted in his interview with the police that he owned the rifle that was confiscated. John Spencer Statement (8/25/03), pp. 16, 25.

2

Spencer was released after the interview because the detectives had "nothing to even hold her for." Staton Dep. 76:4-8. Staton told each of the three suspects that "I will get back with you." Staton Dep. 88:21-24. After plaintiff was released from the Narcotics Office, a witness told Staton that he had overheard Zimmerman ask John Spencer "Are you sure the MF's are dead?" Staton Dep. 83:7-8. Staton and Brumley also learned more about John Spencer and Vasco Zimmerman both having guns. Staton Dep. 81:11-13.

Evidence of Zimmerman's statement to John Spencer, common knowledge about the two men target shooting, and plaintiff's statement to police that John Spencer did not have a gun led Staton and Brumley to believe that plaintiff was lying. Staton and Brumley assumed that plaintiff would have known that her husband had this gun and used it for target practice. Staton Dep. 86:9-16. Based on Spencer's inconsistent statement, the fact that witnesses overheard Zimmerman ask John Spencer about the crime, and the reports of target shooting by John Spencer and Zimmerman, Staton and Brumley decided to re-interview all three suspects. Staton Dep. 84:10-13.

Staton and Brumley returned to the Spencers' trailer on August 26, 2003, but plaintiff had already left for California. Staton and Brumley learned that Spencer's cousin had picked up plaintiff and her husband at around 5:00 A.M. on August 26 to drive them to California. Plaintiff gave her return-trip bus ticket to California to Zimmerman. Spencer arrived in California with her husband on August 27, 2003. Spencer Dep. 45:6-47:11, Dec. 22, 2004.

After consulting with the District Attorney, Staton approached Judge Stephen B. Beasley of the 11th Judicial District Court for the State of Louisiana to obtain arrest warrants for the Spencers and Zimmerman. Judge Beasley issued the warrants on August 28, 2003. However,

the methods employed by defendants to obtain those warrants are somewhat controversial and are discussed further below. Plaintiff was arrested in California on August 29, 2003. The charges against her were later dismissed without prejudice as a result of a plea bargain between the District Attorney and John Spencer.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id. The court must "review the facts drawing all references most favorable to the party opposing the motion." Reid v. State Farm Mutual Auto Insurance Co., 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. Celotex Corp., 477 U.S. at 325; Lawrence, 163 F.3d at 311.

4

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

Pursuant to Local Rule 56.1, the moving party shall file a statement of material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

### I. Qualified Immunity

The determination of immunity is a threshold question that must be resolved inasmuch as it determines a defendant's immunity from both recovery of damages and trial. Roberts v. City of Shreveport, 397 F.3d 287, 291 (5th Cir. 2005). Under the test articulated in Fontenot v. Cormier, 56 F.3d 669, 673 (5th Cir. 1995), a qualified immunity analysis involves a two step inquiry: (1) has the plaintiff alleged a violation of a clearly established right; and (2) was the officer's conduct

5

objectively reasonable in light of the legal rules applicable at the time of the alleged violation?

Qualified immunity provides a shield from personal liability under federal law for civil damages to all state officials "but the plainly incompetent or those who knowingly violate the law." Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000). For wrongful arrest claims, even law enforcement officials who reasonably but mistakenly conclude that probable cause for arrest is present are entitled to immunity. Id. In Mendenhall, the Fifth Circuit further explained that probable cause is a fluid concept, and a practical, common sense determination should be made regarding "whether, given all of the circumstances, a reasonable officer could have believed there is a fair probability [Spencer] committed the crime charged." Id. Even if there is only arguable probable cause for the arrest, immunity will not be lost. See Brown v. Lyford, 243 F.3d 185, 190 (5th Cir. 2001).

## II. §1983 Claims Against Staton and Brumley[1]

Like Mendenhall, this case involves a claim of unlawful arrest with a facially valid arrest warrant. Because Staton and Brumley secured the warrant, the validity of the warrant itself must be analyzed under the usual probable cause standards. See Mendenhall, 213 F.3d at 232. In such a situation, immunity will be denied only if, "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs, 475

---

[1] A question exists to whether Guffy Lynne Pattison ("Pattison"), Sheriff of Sabine Parish, was sued in this individual capacity. There is no evidence before this Court that Pattison had any personal involvement with the investigation of the Spencers and Zimmerman. Pattison merely acted as a sounding board for Staton and Brumley during the course of the investigation. There is no evidence that Pattison was involved in any way in obtaining or executing the arrest warrants at issue. Thus, if Plaintiff has sued Pattison in his individual capacity, those claims must be dismissed as a matter of law for lack of personal involvement.

U.S. 334, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

In the case at hand, defendants relied on the following pieces of information to establish probable cause to obtain the arrest warrants at issue:

(1) Witnesses often saw John Spencer and Zimmerman target shooting near the crime scene;

(2) At her interview, Spencer denied knowledge of the .22 rifle that was found in the trailer on August 25, 2005. She further denied that her husband owned a gun and told detectives she intended to return to California in "probably next couple of days." Spencer Statement (8/25/03), p.5.

(3) John Spencer stated in his interview that he had no plans to return to California any time soon. See John Spencer Statement (8/25/03) p. 29

(4) After the interviews, the detectives released the Spencers and Zimmerman and told plaintiff and her husband that they would "get back with [them]." Staton Dep. 88:21-24.

(5) After the suspects' release, Staton and Brumley learned that a witness overheard Zimmerman ask John Spencer "Are you sure that the MFs are dead?" Staton Dep. 83:7-8.

(6) Staton and Brumley learned from more witnesses that John Spencer owned a gun and often used it for target practice behind the trailer. Staton Dep. 81:11-14.

(7) Staton and Brumley returned to plaintiff's trailer on August 26, 2003 for further questioning, but learned that the Spencers had already left Louisiana for California around five o'clock that morning. Spencer Dep. 45:6-47:11.

On August 28, 2003, Staton approached Judge Beasley during a banquet with warrants in hand. Staton explained that the three arrest warrants were for suspects involved with the Johnsons' murders in Pleasant Hill, and that the suspects needed to be apprehended them right away. Beasley Dep. 11:19-12:5, Mar. 30, 2005. Staton emphasized that the facts surrounding the suspects created an emergency situation. Despite his habit of having a more thorough discussion regarding probable cause before issuing an arrest warrant, Judge Beasley signed the warrants based on "face value" and had little conversation with Staton regarding the facts establishing probable cause. Beasley Dep. 13:4-9.

7

Judge Beasley testified in his deposition that he had relied on similar representations by Staton in the past and had no reason to doubt Staton's assertions regarding these warrants. Beasley Dep. 13:10-12. Although the methods used by defendants to secure the arrest warrants from Judge Beasley were unusual, Staton and Brumley are still entitled to qualified immunity. As the Supreme Court held in Malley, "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Malley, 106 S.Ct. at 1098. Here, the facts do not meet the Malley standard.

The Court notes that the procedure used by Staton to secure the arrest warrants from was hurried and incomplete. However, the underlying facts and assumptions in support of the warrant applications are not so "lacking in indicia of probable cause as to render official belief in its existence unreasonable." Id. Staton and Brumley were reasonable to believe that Spencer, knowing her husband was being investigated for murder, had lied to detectives about John Spencer owning a gun. Further, John Spencer told Staton and Brumley that he did not have plans to return to California any time soon. Thus, it also was reasonable for them to believe that Spencer attempted to help her husband evade law enforcement when she left for California at 5:00 a.m. with her husband approximately twenty-four hours after their release from police custody. Further, defendants believed time was of the essence in obtaining and executing the warrants.

Spencer asserts that verbal omissions by defendants in obtaining the arrest warrants tainted the warrants issued by Judge Beasley. Plaintiff also asserts that Judge Beasley did not make any probable cause findings and that Staton and Brumley omitted relevant information from the affidavit in support of he arrest warrant application. Specifically, Spencer asserts that Staton did not tell Judge Beasley that her return trip to California had been planned and that she had given police her

8

contact information in California.

Time was a factor in both defendants' evaluation of probable cause and Judge Beasley's issuance of the warrant, but the hurried manner in which the warrant was secured does not outweigh the circumstances in which Staton and Brumley found probable cause to arrest Spencer. This Court finds that a reasonable police officer could have concluded that there was probable cause that Spencer helped her husband and Zimmerman to evade the police.

### III. §1983 Claims Against Sheriff Pattison

Spencer asserts that Sheriff Pattison, in his capacity as supervisor, should have stopped Brumley and Staton from arresting Spencer. A claim asserted against a state officer in his official capacity is a claim against the entity of which the officer is an agent. Turner v. Houma Mun. Fire and Police Civil Serv. Bd., 229 F.3d 478, 483 (5th Cir. 2000). Therefore, a claim against Sheriff Pattison in his official capacity is treated as a suit against Sabine Parish. In order to find a municipality liable for a §1983 claim, a plaintiff must show that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc.Servs. of the City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-8, 56 L.Ed.2d 611 (1978).

It is well settled that supervisors are not subject to §1983 liability for acts or omissions of their subordinates. See Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992). To establish §1983 liability against supervisors, "the plaintiff must show that: (1) [Sheriff Pattison] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." See Roberts,

397 F.3d at 292.

In her complaint, Spencer asserts that because Staton and Brumley informed Sheriff Pattison of their actions at each and every step of the investigation, Sheriff Pattison was deliberately indifferent to Spencer's constitutional rights when he failed to stop her allegedly false arrest. This Court has previously found that Staton and Brumley were reasonable to believe they had probable cause to arrest Spencer. Therefore, Spencer's §1983 claims against Sheriff Pattison must be dismissed as plaintiff has failed to establish that there was a violation of her constitutional rights.

**IV. §1983 Conspiracy Claim**

Spencer also asserts that a conspiracy existed between Staton, Brumley, and Sheriff Pattison to falsely arrest Spencer and thereby violate her civil rights. Because the officers are entitled to qualified immunity, the conspiracy claim must fail as a matter of law. See Hale v. Townly, 45 F.3d 914, 920-21 (5th Cir. 1995) (holding that a conspiracy claim is not actionable without an actual violation of §1983).

## STATE LAW CLAIMS

Spencer also asserts state law tort claims of malicious prosecution, false arrest and imprisonment, defamation and intentional infliction of emotional distress, and gross negligence. Spencer's claims for false arrest, false imprisonment, and malicious prosecution all require the plaintiff to prove a lack of probable cause. See Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 756 (5th Cir. 2001). As this Court has already found that Staton and Brumley had probable cause to arrest Spencer, those claims must fail as a matter of law. Id.

Under Louisiana law, a plaintiff must establish three elements to show intentional

infliction of emotional distress: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that such distress would be substantially certain to result from the conduct. Nicholas v. Allstate Ins. Co., 765 So.2d. 1017, 1023 (La. 2000). The Louisiana Supreme Court has held that "courts require truly outrageous conduct before allowing a claim for intentional infliction of emotional distress even to be presented to a jury. Conduct which is merely tortuous or illegal does not rise to the level of being extreme and outrageous." Id. at 1024-25. Based on the evidence before this Court, defendants' conduct in obtaining the arrest warrant at issue cannot be considered outrageous or extreme. Thus, Spencer's claim must be dismissed.

Spencer's also asserts a defamation claim, alleging that there was no factual or legal basis for Staton's warrant affidavit assertions. This claim also fails under Louisiana law because, at the time of the arrest, Staton and Brumley believed there to be probable cause to arrest her. Defamation has five elements: (1) defamatory words; (2) publication, which is communication to a person other than the one alleging the action; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Arledge v. Hendricks, 715 So.2d 135, 138-39 (La. App. Cir. 1998). Plaintiff bases her defamation claim on Staton's publication of the arrest warrant affidavit. Because Staton and Brumley believed there to be probable cause to arrest Spencer, there cannot be malice, actual or implied, in their submission of the warrant affidavit. Accordingly, Spencer's defamation claim also fails under Louisiana law.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE